HENRY BECKWITH et al., Commissioners of Highways, etc., Appellants, *v.* HENRY WHALEN, Commissioner of Highways, etc., Respondent.

The provisions of the "act relating to the joint liability of commissioners of highways" (chap. 225, Laws of 1841, as amended by chap. 383, Laws of 1857), prescribing a mode for enforcing contribution from the commissioner of highway of a town refusing to enter into a joint contract with the commissioner of another town for the building of a bridge which both towns are liable to build, and the provisions of the act further to provide for the building of bridges across streams dividing towns (chap. 639, Laws of 1857), authorizing proceedings by the commissioners of one town to compel the commissioners of an adjoining town to join in the building of such bridge, are not inconsistent with each other; the latter act simply gives towns a choice of two remedies in the cases to which it applies.

Where it is established that a highway has been legally laid out, its continuance as such is to be presumed until the contrary appears.

The mere fact that a portion of a highway has not been worked within six

years after it was laid out does not establish that it has been abandoned or has, under the statute (1 R. S., 520, § 99, as amended, chap. 311 Laws of 1861), entirely ceased "to be a road for any purpose whatever."

In an action brought to enforce the liability given by the act first above mentioned, plaintiffs' counsel in his opening stated, in substance, that a public highway was, and had been since 1858, lawfully laid out in defendant's town, running to the center of a creek dividing the towns; that said highway "had been open and worked in some part of it within six years prior to the commencement of the proceedings in 1868" to build the bridge in question. Plaintiffs were nonsuited on the opening. *Held,* error; that the statement showed *prima facie* a legal and valid highway.

As to whether, when a motion for a nonsuit is made and granted upon an untenable ground, a good ground which might have been obviated had it been presented by further proof, can be availed of on appeal to sustain the decision, *quære.*

*Beckwith* v. *Whalen* (5 Lans., 376) reversed.

(Submitted January 12, 1875; decided May term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant entered upon an order nonsuiting plaintiffs on trial. (Reported below, 5 Lans., 378.)

The action was brought by the plaintiffs, as commissioners of highways of the town of Brighton, in Monroe county, against the defendant, as sole commissioner of highways of the town of Penfield, in the same county, to recover one-half of the expenses of a bridge which the plaintiffs had constructed over Irondequoit creek, which is the dividing and boundary line between these towns.

The plaintiffs' counsel in opening his case to the jury stated, among other things, " that the said towns adjoin each other at the center of Irondequoit creek, which is and has been the boundary line between the said towns for more than twenty-five years past; that it bounds the town of Brighton on the east and the town of Penfield on the west; that there is, and has been ever since the year 1858, a public highway laid out in the town of Penfield, which is described in the complaint; that it was laid out by the lawful authorities of the town of Penfield to intersect, and did intersect, at its said western ter-

minus, another lawful public highway laid out, worked and used in the town of Brighton; that the said highway in Penfield had been open and worked, in some part of it, within six years prior to the commencement of the proceedings to build the bridge over Irondequoit creek mentioned in the complaint; that on the 3d day of December, 1868, the plaintiffs commenced proceedings according to the provisions of chapter 225 of Laws of 1841, as amended by chapter 383 of Laws of 1857 for the construction of a bridge at the point of intersection of the two highways; that the defendant refused and neglected to unite with the plaintiffs in making the contract for building said bridge as mentioned in the complaint, and also refused to unite with the plaintiffs in building said bridge or to pay any part of the necessary expenses thereof; that the plaintiffs alone constructed said bridge and thereafter demanded payment from defendant of one-half the expense, which he refused to pay, etc."

It was conceded that no bridge had ever been built across Irondequoit creek at that point before the present bridge, and that there had been no concurrent action of the towns of Brighton and Penfield in the building of the bridge in suit.

The defendant's counsel then moved that the court nonsuit the plaintiffs upon the opening of their counsel.

The court held that no action could be maintained by the commissioners of one town against those of another, except upon a contract to build a bridge over a stream dividing the two towns, until an application had been made to the Supreme Court and an order granted authorizing the building of the bridge.

The motion was granted, and the plaintiffs' counsel then and there duly excepted.

Further facts appear in the opinion.

*James L. Angle* for the appellants. The opening and partial working of the road was sufficient to constitute it a legal highway. (*Marble* v. *Whitney*, 28 N. Y., 297.) Chapters 383 and 639 of the Laws of 1857 are in *pari materia*, and

must be construed together.   (*Candee* v. *Hayward*, 37 N. Y.,
653.)

*J. H. Martindale* for the respondent.   The portion of the
highway located on the creek, as well as all other portions not
opened and worked, had ceased to be a highway.   (1 R. S.,
521, § 99 ; Laws 1861, chap. 311; *Lyon* v. *Munson*, 2 Carew,
426; *Christy* v. *Newton*, 60 Badau, 332.)   Chapter 283, Laws
of 1857, does not apply to this case.   (*Mather* v. *Crawford*, 36
Barb., 565.)

LOTT, Ch., C.   It is admitted in the statement of the facts
offered to be proved by the counsel of the plaintiffs, on open-
ing their case to the jury, that the highway laid out in the
town of Brighton, referred to therein, was a " lawful public
highway, laid out, worked and used" in that town when the
proceedings for the construction of the bridge in question
were commenced, and it appears to be conceded by the coun-
sel of the respective parties in their points presented to us, on
the submission of the questions raised on the present appeal,
for our decision without an oral argument, that if the highway
in the town of Penfield, referred to in that statement as a
public highway laid out in that town in 1858 was at that time
also an existing public highway, actually opened, worked and
used as such, then that the said towns were liable to make and
construct the said bridge at their joint expense, under the pro-
visions of one or more of the acts of the legislature hereinafter
mentioned.   I shall, therefore, examine the case on the assump-
tion that such concession is correctly made (without the
expression of any opinion whether it is so or not).   It may,
however, I think, be questionable.

The first act which is claimed to be applicable, and under
which the plaintiffs' proceedings to enforce a liability on the
defendant to join in the expense of the construction of the
bridge, is the act entitled "An act relating to the joint liability
of commissioners of highways," passed March 25, 1841, chap-
ter 225, as amended by chapter 383 of the Laws of 1857, passed

April thirteenth of that year. The entire act, as amended, is to be found in volume 3 of New York Statutes at Large (Edmonds' edition), page 533. The first section thereof declares that whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns. The second section provides for the building and maintenance of such bridge or bridges, under "joint contracts," entered into voluntarily by the commissioners of highways of the towns, as therein provided; and the third section prescribes a mode for enforcing contribution from the commissioners of the town refusing to make such contract, which was pursued by the plaintiffs in this action. There is no claim that the provisions of that section have not been complied with. It is, therefore, unnecessary to refer to them specifically. It is, however, insisted that additional requirements were made necessary by an act passed April 16, 1857 (chapter 639 of the Laws of that year), entitled "An act further to provide for the raising of funds by tax to pay for the building or repair of bridges across streams dividing towns or counties."

The first section of that act provides that whenever any adjoining towns shall be liable to make or maintain any bridge over any streams dividing such town, whether in the same or different counties, it shall be lawful for three freeholders to institute proceedings by petition to the commissioners in each of such towns for the building, rebuilding or repairing such bridge, and in case of their refusal to do so, then to apply to the Supreme Court at a Special Term thereof to be held in a judicial district in which the bridge or any part thereof is located, or a judge of said court at chambers, for a rule or order requiring the same to be done, and a course of proceedings is then prescribed in that and the second section for determining whether the application should or not be granted; and, if granted in whole or in part, the order made thereon shall, in case funds are needed to carry it into effect, specify the amount of money required for that purpose and how much thereof shall be raised in each town. The third section is in the following words,

viz. : " The commissioners of highways of any such town are hereby authorized to institute and prosecute proceedings under this act to compel the commissioners of such adjoining towns to join in the building, rebuilding or repair of any such bridge in like manner as the said freeholders are hereby authorized so to do."

The fourth section prescribes the duty of the commissioners when an order directing the erection, rebuilding or repair is made under the previous proceedings.

It is not alleged in the complaint, nor was proof offered to show, that the provisions of the last-mentioned act had been complied with. It was admitted that no bridge had ever been built across Irondequoit creek at the point where the bridge in question was built, and also that there had been no concurrent action of the towns of Brighton and Penfield in relation or reference to its erection.

The counsel of the defendant, on the proof offered by the plaintiffs (considered as proved for the purpose of the motion), and on the above admission, moved the court to nonsuit the plaintiffs, and the case states that " the court held that no action could be maintained by the commissioners of one town against those of another, except upon a contract to build a bridge over a stream dividing the two towns, until an application had been made to the Supreme Court and an order granted authorizing the building of the bridge."

This decision must have been made on the assumption that the act of 1841, as amended April 13, 1857, was not applicable when the proceedings under it were instituted, which was the 3d day of December, 1868. At that time, the act passed April 16, 1857, above referred to, was assumed to be in force, and it is evident from the ground on which the nonsuit was granted that the learned judge granting it considered that it had superseded and in effect, although not in express terms, repealed the provisions of the other acts to which reference has been made. In this, I think, he erred. The act amendatory of that of 1841, although passed April 13, 1857, did not take effect immediately on its passage. It consequently did

not become operative until twenty days thereafter, being May 3, 1857. (See 1 R. S., 157, § 12.) The act passed April sixteenth, containing the provisions that required the order of the Supreme Court which the judge deemed necessary to have been obtained by the plaintiffs, as the foundation for their right of action, took effect immediately. It, therefore, was in force when the act amendatory of the act of 1841 became operative, and (if they are inconsistent with each other) it must be deemed repealed by that amendatory act. If, on the other hand, they are not inconsistent, then they were both in force when the proceedings under consideration were commenced, and I concur with the General Term (JOHNSON, J., giving their opinion) that the two acts of 1857 are not inconsistent with each other. It is said in that opinion, and properly, that the act requiring the order of the Supreme Court, "provides simply for another and different mode of proceedings but does not, in terms, or by necessary implication, make it the exclusive mode of procedure;" and then, after referring to its title, it is added that "the design in passing it appears to have been to give towns a choice of two remedies." I will add that it affords better security to both of the towns chargeable with the expense of the bridge to be built, rebuilt or repaired, as to the plan and cost thereof, and provides more effectually the necessary funds for the purpose. The order of the Supreme Court, or judge at chambers, may, moreover, not only specify the amount of money required to carry out the object of the act, but may also declare how much thereof shall be raised in each town. The act of 1841, as amended, leaves the amount of the cost and the plan of the bridge optional with the commissioners who contract for the performance and execution of the work, without the consent of those in the town who refuse to join therein, and it declares that in and by the action which they may commence, they "shall be entitled to recover so much from the defendant or defendants respectively representing such other towns as the town or towns would be *liable to contribute* to the same," etc. This, it will be seen, makes it necessary to prove the amount of that liability; the act

does not declare what shall be the extent of the contribution, or what shall be the standard by which the same shall be determined or ascertained. It is unnecessary to refer to other differences between the acts. What has been said shows that they may stand together, that the remedies under them are different, and that either act may be enforced without interference with the other. It follows that the ground assigned by the judge for nonsuiting the plaintiffs was untenable, and the General Term properly declined to adopt it, in affirming the judgment. They nevertheless sustained the nonsuit, but placed their decision on another ground, and it becomes now necessary to inquire whether that is tenable.

The proceedings on the trial do not show on what *particular* grounds, if any were specified, the motion for a nonsuit was asked. The case merely states that the defendant's counsel "moved that the court nonsuit the plaintiffs, upon the opening of the counsel," and the statement is immediately followed by that of the judge, declaring that no action could be maintained, because no order of the Supreme Court, authorizing the building of the bridge, had been obtained. It may be questionable whether, under those circumstances, it can be assumed that any other ground was stated by counsel, in making his motion, and if not, whether any ground that might have been obviated by further proof, could be properly available on the appeal to the General Term; that on which they sustained the nonsuit, was, I think, of that nature, but in the view taken of the ground of the decision by me, it is unnecessary to decide the question.

The proof offered, so far as is material to the consideration of that ground, tended to prove, among other matters, the following facts: First. That there was at the time of the trial, on the 9th day of February, 1871, and had been ever since the year 1858, a public highway, lawfully laid out, in the town of Penfield, which is described by courses and distances, commencing at a designated and fixed monument and running to the center of Irondequoit creek, on the western boundary of the town of Penfield, at a point inter-

secting another lawful highway, particularly designated, laid out in the town of Brighton, and which was opened, used and worked as such.

Second. That the highway so laid out in Penfield, "had been opened and worked in *some part* of it, within six years prior to the commencement of the proceedings on the 3d day of December, 1868, to build the bridge in question over the Irondequoit creek."

Those facts present the ground on which the decision of the General Term was placed. The opinion in support of it — after stating that, "as a preliminary to any right of action by the commissioners of one town against the commissioners of another town for the construction or repair of a bridge across a stream dividing two towns, it must be shown that both towns were liable to make or maintain such a bridge,"— proceeds to state that it did not appear by the proof offered, "that there was any open or public highway on the Penfield side of the creek, but the contrary." * * * That all that is stated in regard to it is, "that in the year 1858, ten years before any steps were taken to build the bridge in question, the commissioners of highways of the town of Penfield surveyed and laid out a highway" (describing it), "and that within six years before the steps were taken by the plaintiffs to build said bridge, *a part* of said highway thus laid out had been opened and worked by the town of Penfield." It is then added, as a basis for what was subsequently decided, as follows: "What particular part of the road thus laid out had been opened and worked is not stated, but it clearly appears from the statement that a part of it had not been worked or used, even up to the time of the trial, more than twelve years after the time it had been so laid out. The legal inference from this fact so stated is, that the portion of the road so laid out, which had not been opened or worked for more than six years, had been abandoned or ceased to be a highway for any purpose." Upon the assumption of such *legal inference*, it was held — that as the proof offered (to which reference has been above particu-

larly made) "failed entirely to show a continuous highway through or from the town of Brighton, across the creek and through the town of Penfield or some part thereof, which was intersected by this creek, it did not show any liability of any description on the part of the latter town, either to build or maintain any bridge at that point, and consequently did not state any cause of action against the defendant, and the plaintiff was properly nonsuited on this ground alone."

That ground is, in my opinion, not maintainable. It is based, as before stated, on the inference that a portion of the road laid out in Penfield *had been abandoned and ceased to be a highway for any purpose.* The general law applicable to highways in this State (1 Revised Statutes, p. 520, § 99), as amended by chapter 311 of the Laws of 1861, is cited to sustain that position. It provides, among other matters not pertinent to the present inquiry, that every public highway thereafter to be laid out, "that shall not be opened and worked within six years from the time of its being so laid out, shall cease to be a road for any purpose whatever." It does not, as I now proceed to show, warrant the inference which is claimed to result from the facts referred to and relied on. It will be seen, by examining the terms of the act, which I have stated, that the period of the omission to *open* and *work* a road, which shall cause the highway laid out "*to cease to be a road for any purpose whatever,*" is six years from the time of its being *so laid out.* We must therefore inquire and ascertain when that time was before we can determine the fact whether it has ceased or not to be a road. The case stated that it was in the *year* 1858—but the particular time of that year is not mentioned. Having now become informed sufficiently when it was laid out, we must inquire whether there is any evidence given or offered, to prove that it was not *opened and worked* within six years from *that time.* Those six years, assuming that the road was laid out in the beginning of that year, did not expire till the first day of January, 1864, and the only proof of the time during which the highway or any portion of it was opened and worked, is the statement that "the said

highway in question has been open and worked in some part of it within six years prior to the commencement of the proceedings to build the bridge over Irondequoit creek mentioned in the complaint; and it appears that those proceedings were commenced on the 3d day of December, 1868." The six years prior to that time, consequently, commenced on the 3d day of December, 1868 — leaving the period between that date and the time of laying out the road in 1858 (say the first day of that year), as the time during which the highway might have been open and worked — but we are uninformed by any facts disclosed or offered to be proved whether it was or not so opened or worked during that period. The statement that it was within six years *prior* to the day of commencing the proceedings (3d day of December, 1868), before referred to—does not show at what particular time or times the road was open and worked, or when such opening and work first took place, or how long it was continued; nor is any period specified within those six years during which it was open and worked. We have consequently no information whether it was or not open and worked within six years "*from the time of its being laid out.*"

Again, the mere fact that a portion of the highway was not worked within those six years, does not prove that it was abandoned or ceased to be traveled or used as a highway. It may well be that *such portion*, from its peculiar location or the character of its soil, did not require any work thereon, or that the length thereof may have been so short as not materially to interfere with travel thereon, and it certainly cannot be inferred, from the mere neglect or failure to work a part of a road, that it has *wholly and entirely ceased to be a road or highway for any purpose whatever.* (See *Marble* v. *Whitney*, 28 N. Y., 297.)

All that the plaintiffs were required to prove, in reference to the existence of a road in Penfield, for the purpose of making out their case in that respect, was that it had been laid out as a highway. When that fact had been shown, its continuance was to be presumed until proof to the contrary appeared.

Its discontinuance was a matter to be established by way of defence. The circumstances referred to in the opinion of the General Term were, as I have shown, not sufficient evidence of such discontinuance, and it follows that the ground on which they sustained the nonsuit was untenable.

No other reasons than those given by the judge at the trial and by the General Term have been presented in support of it, and having found them insufficient, we must reverse the judgment appealed from, and a new trial must be ordered, costs to abide the event.

All concur.

Judgment reversed.