Doyle, J.
This is an action brought by the plaintiff to restrain the defendant from prosecuting proceedings now pending in the probate court of this county to assess damages by reason of the condemnation and appropriation for street purposes of a right *83 of way across the right of way,of the plaintiff, for the extension of Prune street in the city of Akron, Ohio.
The action is brought under favor of Railway Company v. Greenville, 69 Ohio State, 487, where the Supreme Court held that a railway comp any, may resort to a court of equity by filing a petition against the municipality, alleging sufficient facts to show that the extension of streets will unnecessarily interfere with the reasonable use of the company’s property to be affected.
Section 1536-103 provides that 'a municipal corporation may appropriate a right of way across a right of way of a railroad for street purposes, when such appropriation will not unnecessarily interfere with the use of the property so crossed by such improvement. This is one of the matters which must be determined before the assessment of damages can be made in proceedings instituted in the probate court.
The city made the appropriation and condemned the property by an ordinance pa'ssed by its city council. Pursuant to said legislation, proceedings were commenced in the probate court by the solicitor to have an assessment of damages made for those whose property was taken.
According to the interpretation of the statutes under which those proceedings were instituted, made by the Supreme Court in the above mentioned case, the probate court only had jurisdiction to make an inquiry and the assessment of compensation by a jury of twelve men.
No adequate remedy is provided for the defendant by way of a hearing before the city council where the resolution to appropriate is pending, although the defendant may have had notice of the passing of the resolution declaring the council’s intention to appropriate.
No provision is made by statute for a hearing before the council on the passage of the ordinance making an appropriation. There is no provision made for summoning witnesses and taking testimony. No issue can be made upon the important question to be passed upon in order to entitle the city to appropriate. There is no provision made for a finding by the council on the subject, and none for recording any such finding if one should be made. Neither error nor appeal will lie *84 to the decision of the council to appropriate; in fact, the proceedings before the council which makes the appropriation have none of the essentials of a judicial trial nor can it be regarded as a remedy at law, of any kind, to settle the question whether the appropriation will or will not unnecessarily interfere with the use of the property so crossed by any such improvement.
“Before the council, the railway company may object and give its reasons for the objection, and urge the interference with the reasonable use of its property. This privilege can not be called an adequate remedy at law. The council is a legislative body and possesses no judicial functions.” Railway v. Greenville, 69 O. S., 487.
It was therefore held in that case that the probate court having no jurisdiction to pass upon the question of whether the appropriation will or will not unnecessarily interfere with the reasonable use of the property, the plaintiff had no adaquate remedy — in fact, no remedy — except by a proceeding in equity in a court of competent jurisdiction to restrain the plaintiff from proceeding with the assessing of damages and the completion of the appropriation proceedings, until the question of whether the improvement would unnecessarily interfere with the reasonable use of its property had been determined. It is therefore apparent that it is proper for this action to be maintained in this’ court, before the compensation is assessed in the probate court, and further, that if the finding of this court on the facts presented should show that this improvement would be an unnecessary interference with the plaintiff’s use of its property, then it would be the duty of this court to restrain the defendant from proceeding further with its application in the probate court.
In Ry. v. Greenville an action was brought before proceedings were begun in probate court, and in this action proceedings are already begun, but the rule of the Supreme Court will obtain in either situation, for if it did not the failure of the railway company to actually know of the various proceedings and acts of the municipal authorities toward the extension of streets across its tracks until the service of summons upon the *85 application filed in probate court, would cause it to be without remedy in the premises.
But, it is claimed by the defendant that this matter has already been adjudicated; that the same question has been litigated between the same parties in another action and determined and settled, and that therefore the plaintiff can not maintain this action in order to re-litigate questions that have once been judicially passed upon.
In support of this position the defendant has cited Bridge Company v. Sargent, 27 Ohio State, 233, and Mengert v. Brinkerhoff, 67 Ohio State, 472, where it was held that a judicial proceeding in a court of record, where a party is called upon to make known his cause of action and establish his defense, he must do so by all The proper means within his control, and if he fails in that respect he will not afterwards be permitted to deny the correctness of the determination in order to re-litigate the same matter between the same parties. This claim of the defendant is made because of matters which were litigated and determined ■ in the former proceeding commenced against the plaintiff in the probate court to assess compensation.
The claim then virtually is that the question of whether such appropriation will or will not unnecessarily interfere with the reasonable use of the property of the railroad company so crossed by such improvement has been judicially determined in another proceeding. The following is a brief history of the proceedings in which it is claimed that this question was judicially determined :
On October 30th, 1902, pursuant to an ordinance for the appropriation of property for the extension of Prune street, the city, through its solicitor, commenced proceedings in the Probate Court of Summit County, asking that a jury be impanneled to make inquiry into and assess the compensation to be paid by the city for the property appropriated for the extension of Prune street. In its. application a description of each parcel of property was set out, among others being that of the parcel across the right of way of the railroad company. There were other defendants besides the railroad company made parties to this action.
*86 The railroad company commenced an action in the court of common pleas to enjoin the city from prosecuting its proceedings in the probate court. A temporary injunction was granted by the common pleas court restraining the city from further proceedings in the probate court. A motion was made to dissolve this injunction, which was granted. The railroad company thereupon appealed from, the dissolution of this injunction by the common pleas court to the circuit court, the matter being docketed in the circuit court as case number 581.
Afterwards the railroad company filed an amended petition in its case in the court of common pleas praying for the same relief as in the original petition; the city filed an answer thereto, and the plaintiff filed a reply. Upon consideration of the case the court found the issue with the city and dismissed the plaintiff’s amended petition. Thereupon the railroad company appealed the case from the common pleas court to the circuit court and the same was docketed as ease number 604.
Afterwards the circuit court consolidated the appeal from the dissolution of the injunction, which had been docketed as ease number 581, with the appeal from the dismissal of the railroad company’s amended petition, which had been docketed as case number 604, and the whole matter was then heard by the circuit court upon the pleadings, evidence, and arguments of counsel. The circuit court dismissed the railroad company’s amended petition, and no proceeding for the vacation or reversal of the said judgment of the circuit court was ever instituted by the railroad company, and the judgment of the circuit court was allowed to remain in full force and effect.
The circuit court made the following order with reference to the dismissal of the plaintiff’s petition:
“And the court, being fully advised in the premises, finds that said plaintiff is not entitled to have the said defendant enjoined from prosecuting an appropriation in probate court, because the grounds upon which this plaintiff asks for an injunction can be set up as a defense to such appropriation proceeding in the probate court.”
This ruling of the circuit court ante-dated the decision of the Supreme Court in the ease of Railway Co. v. Greenville, 69 O. S., 487, which held to the contrary, but the railroad company *87 having acquiesced therein and said ruling being unreversed in that proceeding it remains the rule therein, although not the rule in this action.
The railroad company then filed an answer to the application of the city in the -probate court. A hearing was then had in the probate court upon the application and the answer, and after the hearing it was adjudged by that court that the application to appropriate the lands of the railroad company should be dismissed at the costs of the! city, but without prejudice to its right to commence a new proceeding for the appropriation of the property of said railway company.
To this order of the probate court dismissing the proceedings as to the railroad company without prejudice to the right of the city to commence a new proceeding for the appropriation of its property, the railroad company' excepted and filed a petition in error in common pleas court to reverse the order of the probate court so far as this feature of its judgment was concerned.
The common pleas court reversed the judgment of the probate court and held that the probate court erred by including in its judgment the language, “without prejudice to its right to commence a new proceeding for the appropriation of the property of said railroad company, and the appropriation of the property of any or all of the other defendants herein named, for the extension of Prune street.'” In other respects the judgment of the probate court was affirmed.
Thereupon the city instituted proceedings in the circuit court to reverse this judgment of the common pleas court. Upon a hearing the circuit court reversed the common pleas court, holding that it had erred in. entering judgment reversing and vacating that portion of the judgment and entry of the probate court above quoted, saying that the common pleas court should have affirmed the entire judgment as rendered and entered by the probate court, and ordered and adjudged, “that the judgment of the probate court as rendered and entered by said court, be, and the same is hereby, in all respects affirmed.” Akron v. C. T. & V. R. R. Co., 4 C. C. — N. S., 632.
The railroad company instituted proceedings in error in the Supreme Court of the state, to reverse this judgment of the circuit court. The Supreme Court affirmed the judgment of the *88 circuit court by an unreported, decision recorded in 74 Ohio State Reports, page 457.
The end of this latter litigation then left the appropriation proceedings of the city dismissed as to the railroad company, without prejudice to its right to institute another proceeding for an assessment of such compensation as it might be entitled to by reason of 'the extension of Prune street across its right of way.
Subsequently, on August 29th, 1903, the city filed an application in the probate court to assess compensation to be paid by the city for the property of the railroad company to be appropriated for the extension of Prune street, setting out the..- description of the property, and the passage of the necessary legislation making the appropriation, also alleging that it had the power to appropriate the property for the purpose of such appropriation, and that such appropriation would not unnecessarily interfere with the reasonable use of the property of the railroad company, by the proposed improvement. It is to enjoin the city from prosecuting this proceeding that the petition in this case was filed, and also to restrain the city from opening, extending or constructing Prune street over the railroad company’s premises.
The issue in this proceeding is substantially the one that would have been tried in the probate court under the decision of the 'circuit court first above referred to, when it dismissed the former petition of the railroad company on the ground that the relief which it asked could be afforded it in the probate court. When the issues were made up in'the probate court under the former application therein by the city, no decision was made by the probate court upon the issue joined, as its order indicated. The.finding of the probate court was not against the railroad company; it was against the city. It dismissed the petition of the city for some reason, but without prejudice to its right to bring a new action against the railroad company.
An entry made without a qualification of that kind, dismissing the application of the city, might have left it uncertain as to the real judgment of the probate court. There would have been fair reason for asserting in such an event that the judgment of the probate court was in favor of the railroad company and the *89 proceedings could go no further.- However, as the order of the probate court stands, sustained by the circuit and Supreme eotirts, the former proceedings were dismissed and the city was allowed to begin .over again. It. has begun over again and the railroad company has the same opportunity to make its defense, if any it has, why compensation-should not be assessed and the appropriation completed, that.it would have if these were the first proceedings instituted fqi; the assessment of damages by reason of the extension of Prune street.
This matter, then, before the "court upon the petition in this ease, has not been heretofore adjudicated, and the plaintiff is entitled to have its petition heard, and an opportunity to show, if it can, that the extension of this street .will be an unnecessary interference with the reasonable use of its property. This was not the matter Which was tried and determined in the other litigation. Unless the same issue in dispute was tried and determined in the other case, the matter can not be said to have been litigated. Lessee of Lore v. Truman, 10 Ohio State, 45; Jones v. Kilbreth, 49 Ohio State, 401; Barr v. Poor, 7 C. C.— N. S., 333.
This is in entire harmony with the two cases cited by the defendant in support of its claim of res judicata. There was no determination of the question of whether this appropriation was an unnecessary interference with the railroad company’s use of its property, in the probate court. Although that issue was raised in that case, it was not determined.
If, because the petition or application of the city in that ease was dismissed, it is to be said, that all of the matters that were put in issue were disposed of, then the railroad company might with as great reason set up the claim of res judicata, and say that because the city was the unsuccessful litigant and its application was .dismissed, that therefore the adjudication of all the matters in issue was in its favor, and that it had therefore been judicially determined that the appropriation was an unnecessary interference with the railroad company’s use of its property. This claim would be as tenable as that made in this ease by the city.
Will the extension of Prune street across the railroad yards and tracks of the Cleveland Terminal & Yalley Railroad Com *90 pany be an unnecessary interference with the reasonable use of its property?
The railroad company now has one main track and four sidings crossing that part of its yard through which it is proposed to extend Prune street.
The switches which make up this railroad yard substantially extend from Factory street to Second avenue. The work of laying these was commenced in November, 1901, and they were completed in the spring of .1902. There are two of these tracks on either side of the main track, and they are used for storing ears and also for assembling cars to Be run upon the sidings of the various manufacturing establishments in that vicinity, and also for assembling cars preparatory to being switched to such points as are used for the purpose of making up trains. The first track north of the main track, known as the “south bound,” is also used for passing trains. It is in testimony that there are altogether fifteen regular trains daily, freight and passenger, over the main track, and occasionally an extra, averaging about one a day. Upon these four switch tracks there is an average of about twenty-five cars daily kept stored, or left standing, some days there being as few as twelve or fourteen cars, and other days being as many as thirty or forty cars. Upon the private switches running into the manufacturing establishments there would be an average of over fifty cars. The handling of these cars by a switch engine requires the use of these tracks in this yard to a considerable extent, both day and night. The shifting of these cars makes any grade crossing at this yard quite dangerous for the persons who have occasion to use the crossings, and likewise dangerous to the employes of the company.
The city of Akron has made application in this court for leave to construct a grade crossing pursuant to Section 4 of the act passed April 25, 1904 (97 O. L., 546), Section 3337-17wi, which application is complained of in connection with the 'Other issues in this case by a supplemental petition herein. The length of these sidings is from 1000 to 1100 feet, the distance from Factory street to Second avenue being about 1060 feet. Prune street is 360 feet' east of Factory street.
*91 On the 13th day of May, 1901) a petition was presented to the council of the city of Akron for the vacation of Factory street from the westerly line of Prune street to the northerly line of River street. '
On the 3d of August, 1901, the city of Akron entered into a contract with the Goodyear -Tire & Rubber Company, which owned the land on either side of the part of Factory street proposed to be vacated, whereby the Goodyear Tire & Rubber Company, in consideration of the vacation and abandonment of that portion of Factory street, would convey to the city of Akron by warranty deed, real estate sufficient in length and width lying between the then present southerly terminus of Prune street and the right of way of the Cleveland Terminal & Valley Railroad Company, to extend Prune street between the points aforesaid and to its present width. Accordingly, on June 2d, 1902, an ordinance was duly passed-by-the city council of the city of Akron, Ohio, vacating that portion of Factory street.
Stibsequently the Goodyear Tire & Rubber Company executed to the city of Akron a deed of the land sufficient and necessary to extend Prune street to the right of way of the railroad company, pursuant to that agreement, and the street was opened up by the city and a bridge built across the Little Cuyahoga river, down to the right of way of the railroad company.
, The railroad officials disclaim any knowledge of the proposed vacation of Factory street previous to the passage of the ordinance of June 2d, 1902, and there is no evidence that they had such knowledge until that time. The actual vacation of Factory street accordingly took place after the completion of the trades’ making up the railroad yards of the railroad company in question. As it exists across the right of way of the Cleveland Terminal & Valley Railroad Company it has not been abandoned and is still an existing highway and public road, because the greater part of the right of way at this point lies south of the north line of River street.
The portion of Factory street which was thus vacated by the ordinance was accordingly abandoned and closed, and the Goodyear Tire & Rubber Company have built a substantial shop across the old right of way, and the people who formerly used that me'ans of passing from River street and other points to the *92 south of the railroad right of way over to East Market street and points lying between East Market street and the right of way of the railroad company were therefore obliged to pass around by way of Case avenue or down to Second avenue in order to make the crossing,. except pedestrians who have been, at the risk of life and limb since the closing of Factory street, crossing the tracks of the railroad company and walking down in between them and entering a gap between two fences, on to the portion of Prune street which has been opened up and extended down to the railroad right of way.
This situation has made it a most dangerous crossing for pedestrians, and aggravating to those operating trains and shifters for the railroad company. A great many of the people employed in the shops lying between East Market street and the right of way of the railroad company live to the south of the railroad right of way and are obliged daily to pass and re-pass over the railroad yards in .the manner I have indicated, in order to get back and forth from their homes to their places of employment. Other people in that section of the city use this route as the most convenient route and the shortest route for reaching East Market street in order to get the street cars for coming over to the central portion of the city.
In view of the fact that it is nearly half a mile from Case avenue to Second avenue, and that this section of the city near and contiguous to the railroad yard is one of the busiest manufacturing sections of the city, and the residence portion in the immediate vicinity is fairly well built up and promises to be very thickly populated before many years, and that a route through in the vicinity of Factory or Prune street to Market street would be the shortest route to furnish accommodation to a great many people, both pedestrians and those using vehicles, it is necessary that there should be a road or street through, notwithstanding the dangers incident to a crossing at this point, and notwithstanding that it will interfere with the reasonable use by the -railroad company of its property at this point.
Taking into consideration all that is stated herein and all of the evidence that has been introduced bearing upon this matter, the court is satisfied that a crossing at this point, under all the circumstances, is not an unnecessary interference with the *93 railroad company in the use and enjoyment of its yards. There can be no crossing at grade of a railroad track without an interference with the railroad company in the use of its property, whether its property be a right of way for a single track or a yard.
It is only the unnecessary interference that will preclude the municipality from extending its street across the railroad company’s right of way. The mere fact that the extension of the street as proposed will inconvenience the plaintiff, or interfere with the reasonable use of its property, or subject it to additional expense in transacting its business or operating its road, constitutes no ground for the interference of a court of- equity (Little Miami & Columbus & Xenia R. R. Co. v. Dayton, 23 Ohio State, 510-519). It is only unnecessary interference with the use of its property that will allow a court of equity to intervene and prevent the appropriation of a right of way across its property.
In this instance a crossing at Prune street may necessitate a shortening up of the yard by about 360 feet if the railroad company do not wish to have sidings crossing over the street, but this can be remedied by extending sidings eastward across Third avenue where there is ,not so much traffic. If Factory street is to be Abandoned as a highway, public necessity'will require that Prune street should be extended as proposed by the city across the right of way of the railroad, but, to have both Factory street and Prune street crossing the railroad right of way, under the circumstances, would be an unnecessary interference with the railroad company’s use of its property in this instance.
It has been contended by the plaintiff that Factory street has not been legally vacated, and that there is nothing to prevent the public authorities from opening up Factory street again and restoring it to its use as a public highway. In fact, that portion of Factory street extending across the railroad company’s right of way and lying ‘south of the northerly line of River street was not included in the ordinance vacating Factory street. In fact, it would be very difficult for the railroad company to prevent people from using that crossing at the present time if- the Goodyear Tire & Rubber Company should *94 open up the way for. them to go- back and. forth in and along the old line of Factory street, if they choose to do so. Factory street from the south up to the northerly line of River street is still an existing street, no attempt having been made to vacate it. The south line of River street projected east is very nearly identical with the north line of the right of way of the railroad .company. Until that portion of Factory street crossing the tracks of the railroad company has been legally vacated and abandoned, there is no positive assurance that, if Prune street be opened up across its tracks, it may not at some time in the future be burdened with both crossings.
The legal authorities in this state seem tn indicate that a county road can not be vacated by a municipality. It is admitted “that Factory street was established as a county road prior to its admission into the city limits and that no action of the county commissioners has ever been taken to vacate the same, and that it was laid out and established as a county road long prior to its admission to the city of Akron.”
The statutes provide for the establishment of four kinds of highways within a county:' state roads; county roads, which are opened up and established by the county commissioners; township roads, which are opened up and established by the township trustees; and streets and alleys opened up and established by municipal authorities within the limits of the municipality.
Appropriate proceedings for the opening up and establishing of these several kinds of highways are provided for by statute. County commissioners may locate and lay out a county road within or through an incorporated town or city (Wells v. McLaughlin, 17 Ohio, 99). Or open up one whose termini are wholly within the limits of the city. Buttman v. Fowler, 17 Ohio, 101.
Section 1536-131 provides that in all municipal corporations the council thereof shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, etc., and shall cause the same to be kept open and in repair, and free from nuisance. This imposes upon the city the duty of taking care of all highways within its limits, except where the duty is especially imposed upon some other authority, as for instance, *95 where an improved county road extends within the corporation limits, it is made the duty of the county commissioners in certain eases to keep such a road in repair, as provided in Section 4906, Revised Statutes, and ivhere an improved township road is built in the municipality, the township trustees shall in certain cases provide for keeping it in repair. 97 O. L., 550, Section 21.
There is nothing in Section 1536-131 that gives a municipality any title to public highways, and when part of a county road is taken into a municipal corporation it still remains a county road, although by this section it is made subject to the control and supervision of the municipal authorities. Railroad Company v. Defiance, 52 O. S., 262.
It was held in Bisher v. Richards, 9 O. S., 495, where a state road was laid out on the same ground on which part of a county road was established that the'county road was not extinguished, the court saying—
“The two<may well co-exist as to the part occupied in common, for the benefit of different classes of the traveling public. In one sense, and to a certain extent, the street may be said to belong to the city; but, as highways, the public have an interest in them, the owners of adjoining lots have a special property interest in tjiem, and the city council can not change the character of the public use to which they may have been dedicated by the original proprietors. Wherever the statute may have, from time to time, provided that the fee in the streets shall be considered as vested, it has always declared that it shall be so vested for the uses of the dedication. Whatsoever powers of supervision and control the Legislature may have conferred upon the-city council for the purpose of rendering the enjoyment of the public easement or use more convenient and beneficial, or with a view to the safety, health, convenience or comfort .of the inhabitants of the city, these powers are all of a public municipal character, and their exercise is quite different from the acts of a private corporation dealing, at its discretion, with property over which it may exercise all the rights incident to absolute ownership.” State, ex rel, v. Cincinnati Gas Light & Coke Co., 18 Ohio State, 262. Dictum, 292.
The Legislature has not made any provisions for changing the character of the highway, although it may have come under the supervision of the municipal authorities. The municipal au *96 thorities have the usufruct of the highway and are charged with its maintenance and repair, and as custodian of the same can maintain an action for damages thereto (Railway v. Commissioners, 35 Ohio State, 1); and can not escape liability for failure to keep it in repair from the fact that it is a county road. Steubenville v. King, 23 Ohio State, 610.
The statutes make ample provision for abandoning county roads, township roads, and streets and alleys in the highways, by appropriate proceedings by the several authorities in the several political divisions — that is, the county commissioners have to do with the vacation of county roads (Section 4661); and township trustees have to do with the vacation of township roads (Section 4683); parties aggrieved by the action of these boards in the vacation of highways have a remedy by appeal to the probate court (Section 4688).
The municipal authorities in this state have a right to vacate streets and alleys by proceedings prescribed by statute. Section 1536-145. (Section 2652; R. S., 1536-1457; Am. 97 O. L., 292.)
The Legislature has been very careful in its use of words in the several sections giving the municipal authorities care and control of public highways, streets, etc., and in conferring upon it authority to vacate streets and alleys; Section 1536-131 puts into the custody of the council of the municipality the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts within the corporation, while Section 1536-145 very carefully limits the power of vacation to streets and alleys. (As to distinction between roads and streets, see 97 Ohio Laws, 523, Section 3; R. S. 4614-13.)
Section 1536-147 would seem to intimate that the vacation was limited to such streets as have been dedicated to the public use and accepted by council.
The power given in the municipal code to the court of common pleas upon appropriate proceedings to vacate highways in a municipality is also limited to streets and alleys.
In the case of Nail & Iron Company v. Furnace Company, 46 Ohio State, 544, where a road in a municipality had not been worked for a great many years over a steep hill very difficult of use and in bad condition, and a new road had been established in the vicinity intended to take its place, and travel had sub *97 stantially been diverted to the new road, and portions of the old road had been fenced in and an attempt was being made to have it declared an abandonment before the period of twenty-one years had elapsed, the court very aptly at page 549 intimate that there are regular ways for the vacation of the several kinds of highways in Ohio.
“Where a street or road becomes useless, for the vacation of a county road by the commissioners, a township road by the trustees, and a street in a city or village by council thereof, or by the court of common pleas, the plenary power of the Legislature over streets and highways is such that it may, in the absence of constitutional restrictions, vacate or discontinue the public easement in them or invest municipal corporations with this authority.” Dillon, Section 666, Fourth Edition.
A municipal corporation can not' vacate a public highway withoiit express legislative authority so to do. Railroad Company v. Defiance, 52 Ohio State, 262.
It does not make any difference whether a country road, after it has been brought into the city by an extension of territory, may thereafter be called a street — it is still a country road. It was not created by the city, and inasmuch as the Legislature has seen fit to give only the boards which have established and laid out such roads authority to vacate them, an implied power to vacate them by the. municipality after they have become city streets does not necessarily exist.
In Railroad Company v. Cummins, 34 Bulletin, page 301, the Circuit Court of Ashtabula County held, in a case which arose in Conneaut, that the council had no jurisdiction to vacate or close the highway in question, because it was a county road, laying down the general proposition in its conclusions of law that councils of municipal corporations in Ohio have no authority to vacate county roads within the corporation but are obliged to keep the same open and in repair and free from nuisance until vacated by the proper authorities. This case went to the Supreme Court and was decided without a reported decision, in 53 Ohio State, page 683, with this journal entry: “Judgment affirmed on the sole ground that a, municipal council has no power to vacate that part of a county road which lies within the municipality. ’ ’
*98 In view of the statutes and decisions above referred to there can be no mistaking the meaning of the Supreme Court in affirming the- judgment of the circuit court, although its decision was not written out’ at length and published.
And this, although it may be true as announced by the circuit court in Evans v. Moore, 7 C. C. — N. S., 124, that an inferior court should not construe a decision of the Supreme Court as absolutely decisive upon the question of substantive law, where it appears that the court confined itself to the particular state of facts involved and no syllabus was prepared enunciating general governing principles thereon, if good conscience and public policy dictate a contrary decision. If the decision of the Supreme Court had simply been upon the facts involved in the Conneaut case and the journal entry had not stated the reasons for affirming the decision of the circuit court, this rule might with some reason appeal to the court; but, taking into consideration the statutes of this state governing the vacation of highways, and the decision of the circuit court in the Conneaut case, and the special reason given by the Supreme Court for the sustaining of the circuit court, this court believes that the Supreme Court recognized the law of this state to be that a municipal corporation can not vacate a county road within its limits.
Such being the law of this state, the ordinance of the council of the city of Akron vacating Factory street would not work a legal vacation of the same, and it lies within the power of persons interested to institute an action to annul the proceedings and again open up Factory street.
Now, taking into consideration the fact that that portion of Factory street extending across the tracks of this railroad company was not in fact attempted to be vacated, and there being no question about its not being vacated, and the further fact that the proceedings of the council in attempting to vacate a portion of Factory street lying north of the tracks of the railroad company were contrary to law, as announced by the Supreme Court in Railroad v. Cummins, it would be an unnecessary interference at this time to open up another street across its tracks within 360 feet of Factory street, when at any time it is liable to have *99 Factory street opened up again and made a public highway, and is now subject to the burden of its use as a highway to the extent that it can be used in passing from River street across to the buildings of the Goodyear Tire & Rubber Company.
The proper course, if the city desired the vacation of Factory street, in order that it might lay out and establish another street to take its place which was better adapted to the needs of the public, would have been to have gone to the county commissioners and instituted the proper proceedings for the vacation of Factory street.
The highway or county road known as Factory street, being admitted to be a county road, and such when it was taken into the city by annexation, must in- this action be considered to still exist as a county road. The presumption which exists throws the burden upon the city, under the finding made, to show the court that as a' public highway it has no longer any existence. Until that is shown it would be unfair to the railroad company to compel it to take the burden of another crossing at Prune street.
“A highway or street once legally laid out will be presumed to continue until the contrary is shown.” Beckwith v. Whalen, 65 N. Y., 322; Horey v. Haver straw, 124 N. Y., 273 (26 N. E., 532); Cohoes v. Delaware, etc., Canal Co., 134 N. Y. 397 (31 N. E. 887).
See, also, Blackman v. Riley, 138 N. Y., 318 (34 N. E., 214); 2d Am. & Eng. Ency. of Law, Vol. 22, page 1242.
At the present time the old way of travel between the territory lying south of the railroad and that lying north thereof, has been shut off and wholly destroyed for all present practical purposes by the erection of buildings by the Goodyear Tire & Rubber Company in the old highway.
The council of the city of Akron, having the control and supervision of the streets and other highways in the city, have declared in favor of abandoning Factory street and opening up of a new street to take its place in the vicinity of that old road, by extending Prune street.
Public necessity does not require the use of the old road if a more convenient avenue of travel can be laid out by the munici *100 pality, and one which will be better suited to the needs of the traveling public, and more convenient to the factories, shops and business establishments and employes thereof and residents in that vicinity, provided the change can be made without unnecessary interference with the railroad company’s reasonable use of its property to be crossed by this new highway.
Allen, Waters, Young & Andress, for plaintiff.
C. F. Beery and Scott D. Kenfield, for defendant,
It has been found that there is no unnecessary interference if the old highway is legally vacated and all rights of the public to a crossing at that point legally barred. Until such right of the public is legally barred, the municipality should not be allowed a second crossing in that vicinity.
Inasmuch as this is a suit in equity, instituted by the plaintiff, it is the duty of the court to require of the plaintiff that it do equity in this transaction. The public has been shut off from a necessary and valuable crossing over the right of way of the plaintiff and, by reason of the legal obstacles to allowing, at this time, a second crossing to take the place of the old crossing, the plaintiff should not be accorded the unqualified relief asked for by way of injunction.
Practically, at the present time, the railroad is relieved of the old Factory street crossing, though from a legal standpoint it is still encumbered with it. If the right to cross the railroad right of way at Prune street be absolutely denied to the city, and the public should continue to be barred from using the old crossing as it is at present, the railroad company will have been relieved of a crossing very much needed in this vicinity. The city should be given an opportunity to correct the defects in the attempted vacation of Factory street, in order to carry out the projected street improvement in that part of the city.
Therefore, the injunction prayed for by the plaintiff will be allowed until the proper authorities shall have vacated the highway known as Factory street, and the city of Akron will be ordered to desist from further prosecuting its proceedings to assess compensation in the probate court until there has been a legal vacation of said Factory street by the proper authorities, the commissioners of this county.