In the Matter of the Application of THE CITY OF NEW YORK Relative to Acquiring Title, etc., to the Lands, etc., Required for the Opening and Extending of AMETHYST STREET, UNIONPORT ROAD and RHINELANDER AVENUE.

Application of CHARLES H. BAECHLER, Appellant, for Damages by Reason of the Discontinuance and Closing of Unionport Road.

CITY OF NEW YORK, Respondent.

First Department, October 24, 1919.

**Eminent domain — municipal corporations — street opening, city of New York — Unionport road is public highway — evidence — presumption that established highway continues to be such.**

Proceeding brought by the city of New York to acquire lands for opening and extending a street. Evidence examined, and *held*, to show that Unionport road, which is to be closed and discontinued, has been a public highway since 1726 and that the commissioners of estimate should be required to determine the damages to the petitioner's property caused by the closing of said street.

In such proceeding the petitioner was not required to prove that the Unionport road of to-day is the same as the Unionport road of 1726, for that will be assumed by the similarity of name in the absence of inherent improbability or proof to the contrary, and especially so where the original description of the street is by metes and bounds in terms of the then ownership of adjoining real estate.

When a highway is once shown to exist it is presumed to continue until it is shown to exist no longer, and when once established it continues until discontinued according to law.

APPEAL by Charles H. Baechler, the petitioner, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of July, 1919, denying his motion for an order directing the commissioners of estimate in the above-entitled proceeding to ascertain and determine the damages caused to petitioner's property by the closing of Unionport road.

*Lawrence E. French,* for the appellant.

*L. Howell LaMotte* of counsel [*Joel J. Squier* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

First Department, October, 1919. [Vol. 189.

Page, J.:

The only question involved on this appeal is whether the moving papers show that Unionport road was a public street. It was shown from the town of Westchester records that a highway was laid out by the metes and bounds therein named in 1720. That this highway, under the name of Unionport road, was extended to the " Brunk's " river in 1726, was shown by an extract from the County Road Book of Westchester county. The learned corporation counsel claims, however, that there is no evidence furnished by the petitioner that the Unionport road of to-day was the same as the Unionport road of 1726. It is not necessary for the petitioner to show this. It will be assumed, in the absence of inherent improbability or proof to the contrary, that the same name at all times designates the same person or thing. This rule is especially applicable where the description by metes and bounds of the highway when originally laid out is given in terms of the then ownership of adjoining real estate. Further, when a highway is once shown to exist, it is presumed to continue until it is shown to exist no longer; when a highway is once established, it continues until discontinued according to law. (*Beckwith* v. *Whalen*, 65 N. Y. 322; *City of Cohoes* v. *D. & H. C. Co.*, 134 id. 397, 406, 407; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 id. 84, 96.) Therefore, the petitioner has alleged sufficient to show *prima facie* that the Unionport road as it exists to-day was legally established in or before 1726. Furthermore, it was shown that in a partition action in 1893 a map was filed in the office of the register of Westchester county, showing that the property abutted on Unionport road. The petitioner states of his own knowledge that the Unionport road existed prior to 1895, when this territory was annexed to and became a part of the city of New York; that during all that time it was used by the public as a highway and street for both pedestrians and vehicles, and that since 1895 the street was cleaned by the street cleaning department, patroled by the police department, and that street lamps were erected and maintained by the city. It further appears that the board of aldermen of the city of New York on July 26, 1904, adopted an ordinance, previously adopted by the board of estimate and apportionment and thereafter approved

by the mayor, which provided that the route of the New York, Westchester and Boston Railway Company should cross Unionport road. The ordinance provided that no street should be crossed by the railway at grade and that all streets now opened and in use, crossing the line of said railway, must be carried over or under the railway by and at the cost and expense of the railway company. On June 17, 1911, the city filed section 37 of the final map in the office of the register of New York county. On this map Unionport road was continued with grades passing under the structure of the railway. On October 5, 1911, the board of estimate and apportionment approved the plan of the bridge for carrying the tracks of the railway company over Unionport road. The bridge was erected, and the railroad is now in operation and crosses the bridge. On July 10, 1913, an amendment of the map of section 37 was filed in the New York county register's office upon which the portion of Unionport road involved in this proceeding was omitted and, as other streets bounding the block were graded at that time, this portion of Unionport road thereby was closed.

From this statement of the facts it is clear that Unionport road was a public street. Not only was it shown to have been legally opened, but also it was shown to be such by long public use and acts of the public authorities in recognizing and adopting the highway. (*Matter of Hunter*, 163 N. Y. 542.) The order should be reversed, with ten dollars costs and disbursements, and the motion granted.

CLARKE, P. J., DOWLING, MERRELL and PHILBIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted.