### In re TOWNS OF MADRID, WADDINGTON, AND LOUISVILLE.

(Supreme Court, Special Term, St. Lawrence County.  July, 1904.)

1. BRIDGES—LIABILITY OF TOWNS—MAINTENANCE AND REPAIR.

Highway Law, § 130 (Laws 1890, p. 1202, c. 568, as amended by Laws 1902, p. 883, c. 321), provides that towns shall be liable for the expense of the construction and repair of public free bridges over streams within their bounds, and when such bridges are constructed on the boundaries of the towns such towns shall be jointly liable. Section 134 (Laws 1890,

p. 1202, c. 568) provides that, when any two towns are liable to build or maintain a bridge, the same shall be built and maintained at their joint expense.  Section 136 provides that, when adjoining towns are liable to make or maintain any bridge over a division stream, whether in the same or different counties, freeholders may petition commissioners of highways to build or repair such bridge, and, if they refuse so to do, such freeholders may apply to the Supreme Court.  *Held*, that the term "streams dividing such towns," used in section 136, was synonymous with the term "streams on the boundaries of such towns," as used in section 130, and therefore that the freeholders could apply where the liability of the town was under such section 130 for the remedy given by section 136, though the stream does not run along a line dividing adjoining towns, but traverses it.

In the matter of the application of the freeholders of the towns of Madrid, Waddington, and Louisville for the building of a bridge across Grass river at the joint expense of such towns.   Order granted.

Kellogg & McCarthy (A. X. Parker, of counsel), for petitioners and town of Louisville.

Frederic J. Merriman, for town of Madrid and highway commissioners of Madrid.

Robert E. Waterman, for town of Waddington.

SPENCER, J.   A petition by freeholders of the towns of Louisville, Madrid, and Waddington, in St. Lawrence county, to require the commissioners of their respective towns to build and maintain a bridge across Grass river at or near Chase's Mills, in said county, came on to be heard at a term of this court in March, 1903, and the court, regarding the case as a doubtful one, made an order referring the matter to a referee to ascertain the facts and report the evidence.   The referee has made his report bearing date February 20, 1904.   This is an application by the petitioners upon the report and evidence for the court to make the order prayed for in the petition.   Argument was had at the St. Lawrence Special Term in May, but briefs of counsel were not submitted until the 7th day of July.   As the referee has accompanied his report with a careful opinion upon the questions of law involved, I have been thereby relieved of much work that otherwise would have been necessary.

I am fully in accord with the opinion of the learned referee that the proceedings to open and lay out a highway along the line dividing the towns of Louisville and Madrid, so as to connect with the end of the highway at low-water mark in the line dividing the towns of Louisville and Waddington, were regular, and that there is now a lawful highway existing across Grass river at the place where the bridge is sought to be built.

I am also in accord with the views of the learned referee to the effect that the towns of Louisville, Waddington, and Madrid are, under the provisions of section 130 of the highway law (Laws 1890, p. 1201, c. 568, as amended by Laws 1902, p. 883, c. 321), liable to pay the expense of constructing and maintaining a bridge at the place indicated in the petition, and am fully in accord with the reasoning which he gives for that conclusion.   I do not, however, agree with him in his construction of section 136 of the highway law (Laws 1890, p. 1202, c. 568), to the effect that the remedy thereby afforded is not as broad as the lia-

bility imposed by section 130. The provisions of the statute (section 130) bearing upon this subject, when brought into juxtaposition, read as follows:

"The towns of this state,. except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public free bridges, constructed over streams or other water within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their boundaries  *  *  *  and ·when such bridges are constructed over streams or other waters forming the boundary line of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses."

Section 134 provides:

"Whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of such towns, without reference to town lines."

Section 136 provides:

"Whenever any adjoining towns shall be liable to make or maintain any bridge over any streams dividing such towns, whether in the same or different counties, three freeholders in either of such towns may, by petition signed by them, apply to the commissioners of highways in each of such towns, to build, rebuild or repair such bridge, and if such commissioners refuse to build, rebuild or repair such bridge within a reasonable time, either for want of funds or any other cause, such freeholders, upon affidavit and notice of motion, a copy of which shall be served on each of the commissioners, at least eight days before the hearing, may apply to the supreme court at a special term thereof."

The referee places his decision upon the different terms employed, viz., the words "streams upon their boundaries," in section 130, imposing the liability, and the words "streams dividing such towns," in section 136, providing the remedy. I am, however, of the opinion that no such presumption arises from the employment of these different expressions, and that the stronger presumption is that the Legislature would not have imposed a liability without providing a remedy whereby such liability might be enforced, and especially so inasmuch as it did, as conceded, provide a remedy for a part of that liability. The liabilit- is imposed upon towns to construct bridges over "streams or other waters upon their boundaries," and the stream and bridge in question fall literally within the terms so employed. Thus, by the express language of the statute, liability is imposed upon each of the several towns involved in this controversy for the expense of constructing the bridge referred to. Now, shall we say that because, in section 136, in providing for the proceedings to enforce the liability, the Legislature made use of the term "streams dividing such towns," it intended to create a distinction so that in one case the. liability might be enforced and in the other it might not? I think not. Such a construction would not be in accord with the history of legislation upon this subject. The statute of 1841 (page 207, c. 225, § 1) provided as follows:

"Whenever any adjoining towns shall be liable to make and maintain any bridges over any stream dividing such towns, such bridges shall be built and repaired at the equal expense of said towns, without reference to town lines."

It is true that the Court of Appeals, in commenting upon this provision (without construing it, as at the time of its comments the pro--

vision had been repealed), said that it had application only to "bridges over a stream dividing the towns"; but in 1857 (page 788, c. 383, § 1), with the view, as the court says, of obviating such a difficulty, and rendering the act applicable to every case where a bridge is situated in part in two or more towns, without reference to the question whether the stream divides the towns or the town line intersects or crosses the stream and divides the bridge longitudinally, the Legislature amended the section and made it read as follows:

"Whenever any two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns, without reference to town lines."

Lapham v. Rice, 55 N. Y. 472, 479; Day v. Day, 94 N. Y. 153, 156.

The statute continued in these terms until the adoption of the high-. way law in 1890 (Laws 1890, p. 1201, c. 568; Laws 1902, p. 883, c. 321), which was the work of the revision commission, and was intended as a re-enactment of pre-existing statutes. As was the well-known custom of that commission, verbal changes were made in existing statutes on tautological grounds, and so we find here, as in other instances, the use of a variety of expressions, but all intended to convey the same sense. It certainly cannot, without the clearest evidence, be believed that it was intended to restore the defective act of 1841. Especially is this so in the presence of the fact that the amendment of 1857 has been retained intact in section 134 of the present law. The object to be obtained by the original passage of that amendment is stated by the Court of Appeals as follows:

"The original act only embraced cases where the streams separated the towns; in other words, where they abutted thereon and the stream run along the line. By the amendment towns lying upon both sides of the stream, where a bridge was necessary upon the lines thereof, were embraced; in short, it was made to include all towns in which any part of the bridge was located, and all were required to contribute jointly to the expense, without reference to town lines; that is, without regard to the particular part located in any town." 55 N. Y. 472, 479.

I think it is therefore beyond question that under the statute the three towns are jointly liable to build and maintain the bridge in question.

We thus come to the question whether the statute authorizing the present proceedings is broad enough to include a case where the stream does not run along the line dividing the towns. If it does not, it must be clearly an oversight in legislation, as no good reason exists for making the proceedings applicable to one instance and not in the other. So far as I know, this method of procedure did not exist prior to 1857. In that year the Legislature (only three days after the passage of the amendment extending the liability hereinbefore referred to) passed an act (Laws 1857, p. 435, c. 639) whereby it provided for these proceedings by freeholders and for the raising of money by tax to defray the expenses of building bridges which might be ordered in such proceedings. In specifying when such proceedings might be instituted, it made use of these words: "Whenever any adjoining towns shall be liable to make or maintain any bridge over any streams dividing such· towns * * * it shall be lawful for three freeholders," etc. Stand-

ing alone, this provision might very well, under the dictum of the Court of Appeals above referred to, be held to apply only to adjoining towns divided by a stream running along the dividing line; but this provision, as we find it incorporated in the revision (Highway Law, § 136), does not stand alone, and must, therefore, be construed in connection with the other provisions of that law. The liability and the proceedings to enforce the same are treated in a general law, which is supposed to. cover the entire subject. There are provisions which make it the duty of towns having streams on their boundaries to build and maintain bridges at their joint expense without regard to town lines, and no good reason can be found for not providing a method for enforcing the performance of this duty in its entirety. The words in the section (136) relating to the proceedings are not to be construed in a strict technical sense, as would be our duty if they were employed to limit obligation; but we should regard them as employed in a general and latitudinal sense, and as having express reference to those other provisions where duty and liability are imposed. The granting of authority to commissioners of any such towns to build bridges and sue to recover from the other towns their proportionate share does not militate against this construction. It would be a strange result if the right of freeholders to institute proceedings should depend upon the question whether a town line traverses the stream or runs along it longitudinally. But be this as it may, I am of the opinion that within the rules of statutory construction the three towns in question are adjoining towns, and that the Grass river divides them from each other. The towns confessedly adjoin, and so clearly satisfy the terms of the statute in that regard. Towns contiguous only at corners have also been so regarded. Holmes v. Carley, 31 N. Y. 289. If that part of Louisville which lies south of the river constituted a separate town, and there were, therefore, four towns whose corners came into contiguity at the center of the stream, I think there would be no confusion in saying that the river divided all four towns from each other. Certainly, this would be so if it be true that towns which touch only at corners are adjoining towns. If anything divides them, it is of necessity the river. I do not see how the case is changed by the situation of the towns here. The fact that Louisville extends on both sides of the river certainly has not that effect; nor does the fact that Madrid extends only to low-water mark. The river still divides them even if the place of their contact consists of a point only. Adopting the logic and the reasons set forth in the opinion of Judge Potter in the case last cited, I am constrained to the view that the proceedings were authorized by the letter and intent of the statute. The petitioners may therefore take the order prayed for, and as authorized by section 136 of the highway law. Order may be. settled upon three days' notice. The question of costs reserved until then.

Ordered accordingly.