In the Matter of the Application of FREEHOLDERS OF THE TOWNS OF ELMA AND MARILLA, IN THE COUNTY OF ERIE, IN THE STATE OF NEW YORK, for the Building of a Bridge over Big Buffalo Creek, Where the Same Intersects a Public Highway Known as Marilla-Elma Town Line Road.

TOWN OF ELMA and Others, Appellants; C. PERRY ELLS and Others, Freeholders of the Towns of Elma and Marilla, Respondents.

Fourth Department, May 10, 1922.

Bridges — application under Highway Law, § 256, by freeholders of adjoining towns to compel highway superintendents of such towns to build bridge on town line road granted — records showed that road was town line road and bridge at point in question had been built and protected by breakwater by both towns — immaterial that road was in use before established as town line road and that bridge was wholly in one town — town line road need not be exactly on town line — application properly made to Supreme Court.

An application by freeholders of two adjoining towns under section 256 of the Highway Law to compel the highway superintendents of those towns to construct a bridge on an alleged town line road was properly granted, where it appeared that the records made it reasonably clear that such road was a town line road and it also appeared that the bridge at the point in question was built jointly by the two towns and later protected by a breakwater built by both towns.

It was immaterial that the road at the point in question was wholly within one of the towns and may have been in use before the commissioners of highways of the two towns designated it as part of the town line road, for the commissioners had the right to deviate from a straight course in view of the obstacles in that vicinity and adopt the course of any road which may have been there, and a town line road need not be exactly on the town line.

The Supreme Court has jurisdiction of such a proceeding, for, if it were otherwise, the freeholders of a town would be unable to enforce their rights under the Highway Law.

KRUSE, P. J., and SEARS, J., dissent, with memorandum.

APPEAL by the Town of Elma and others from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 10th day of November, 1921, granting the application of the respondents requiring the towns of Elma and Marilla jointly to construct a bridge over Big Buffalo creek on a highway known as the Marilla-Elma town line road, the portion of the highway upon which the bridge is situated being in the town of Marilla.

*Henry W. Hill* and *Dean R. Hill,* for the appellants.

*Frank L. Barnet,* for the respondents.

HUBBS, J.:

This proceeding was commenced by certain residents of the towns of Elma and Marilla in the county of Erie to compel the town superintendents of those towns to construct a bridge on the town line road between said towns over Big Buffalo creek at a point situated about 100 feet east of the town line in the town of Marilla. The proceeding was taken under section 256 of the Highway Law, which provides, in substance, that wherever adjoining towns shall be liable to make or maintain a bridge jointly and refuse to do so after a proper request the court may, upon motion, make an order requiring them to do so. The order is sought to be sustained under the last clause of section 207 of the Highway Law, which reads as follows: " and all bridges upon such highways [town line roads] shall be built and maintained jointly by the towns whether wholly located within one of them or otherwise."

The Special Term decided upon the hearing that the road in question was a town line road; that the said towns were jointly liable to build and maintain the bridge in question; and directed that the same be built. The appellants have appealed from said order.

The town line now existing between the towns of Marilla and Elma is the same town line that formerly existed between the towns of Aurora and Wales. The last-mentioned towns were divided and the towns of Elma and Marilla carved therefrom, but the boundary between the new towns remained the same as the boundary between the old towns. The town of Elma was founded in 1856. The town of Marilla was founded in 1853. The towns of Aurora and Wales were carved out of the town of Willink in 1818. The first official record referring to the highway in question is found in the records of the town of Wales under date of July 28, 1831. It is a record of a meeting of the highway commissioners of the towns of Wales and Aurora " upon the road hereinafter described between the towns of Aurora and Wales " for the purpose of making an alteration in the highway which is referred to in the record as the " town line road."

The next official reference to the highway in question was made in a record dated May 4, 1853. This is a record of a meeting of the commissioners of highways of the towns of Wales and Aurora " for the purpose of laying out a highway upon the line between the said towns." The commissioner ordered: " That a highway be laid out upon the line between said towns." Then follows a description of the highway to be laid out between said towns and said description describes and includes a road upon which the bridge in question is now located. That record conclusively estab-

Fourth Department, May, 1922.    [Vol. 201

lishes that the road at the point where the bridge was located was laid out and established at a joint meeting of the commissioners of highways of the towns of Aurora and Wales before the towns of Marilla and Elma were founded.

The highway known as Salem road was laid out October 1, 1849, by the commissioners of highways of the town of Aurora. In the order laying out said highway it is provided that the same shall end in the " center of the town line road," showing that at that time the road was known as the town line road. On April 21, 1852, the Hemstreet road was laid out by the commissioners of highways of the town of Aurora and it commenced at a point on the town line and ran northerly. The angle in the road where the bridge in question was located was, therefore, laid out by the commissioners of the towns meeting together after the Hemstreet and Salem roads were laid out by the commissioners of the town of Aurora.

The bridge in question was built jointly by the towns of Elma and Marilla in 1863 and since that time the highway and bridge at that point have been allotted to the town of Elma as its portion of the town line road and has been cared for by that town although the bridge and a part of said town line road in question is entirely in the town of Marilla. It is hardly reasonable to suppose that the town of Elma would care for that part of the road lying in the town of Marilla unless it was a part of the town line road properly allotted to it. It seems reasonably clear that the road in question was in fact a town line road properly laid out and that it was always known and treated as such down to about the time of the commencement of this proceeding.

There are no records in the town clerk's office of the town of Elma covering the period from November 5, 1860, to March 5, 1867. This is the period during which the bridge in question was built and it will be noted that it covers the period of the Civil War. The records of the town of Marilla have been burned.

In 1905 the two towns jointly constructed a breakwater to protect the bridge. The records of the town of Elma, under date of April 16, 1905, show the authority to make that improvement. The record shows a meeting of the town boards of the two towns in joint session and in the record the road is referred to as the " town line road." Said records also show that the two town boards met together at the " town line bridge," to settle certain claims for damages. There is also another record of a meeting to confer about repairs to the bridge.

It will thus be seen that during all those years the two towns have treated the bridge as a town line bridge on a town line

road and have jointly kept it in repair and protected it by a breakwater.

It is urged by the appellants that the road at the point where the bridge was located is not a town line road because it was used at that point as a road before the order was made on March 4, 1853, at a joint meeting of the commissioners of highways of the two towns laying it out as a part of the town line road, and because that part of the road is wholly in the town of Marilla. There is very little, if anything, in the record to support such contention, but assuming that it is true, I fail to see how it helps the appellants. When the commissioners of the two towns met to lay out a continuation of the town line road they were confronted by the fact that a continuation of the town line road northerly would necessitate the building of a road over the creek at three points, thus necessitating three bridges, and such a road, if built, would go over a high hill requiring much filling and grading. Assume that at that time a road and a bridge existed on the angle as it now is. What was to prevent the commissioners from adopting such course for a continuation of the town line road around the bend in the creek? And assume that the survey as made followed an old road across a bridge and then extended northerly bringing the new extension back on the town line at a point northerly of the hill in question and that it was then continued northerly on the town line. The facts disclosed by the record and undisputed are that a survey was made for the town line road extension and that the road as it now exists is practically on that survey. It also appears that after the survey the two towns treated the road as thus surveyed as a town line road and bore the expense of maintaining it jointly.

We think, therefore, that it cannot now be questioned but what it was and now is a town line road which the two towns must jointly maintain. It is clear that a town line road need not necessarily be located exactly on the town line. Chapter 183 of the Laws of 1821 (amdg. R. L. of 1813, chap. 33, § 19; 2 R. L. 276, § 19) provided that a town line road might be laid out upon the town line or as near thereto as the convenience of the ground might permit and that the commissioners could vary the line to the one or the other side of the town line if it seemed to them proper. That provision, in substance, has been carried into the existing statute. The last clause of section 207 of the Highway Law reads as follows: " All bridges upon such highways shall be built and maintained jointly by the towns whether wholly located within one of them or otherwise."

It seems perfectly clear that such bridge must be built and maintained jointly by the towns, although it happens to be located

wholly within one town.    It is urged, however, that even though the duty rests upon the towns jointly to rebuild the bridge, still that the duty cannot be enforced in this statutory proceeding.    We think that the Special Term had jurisdiction to make the order appealed from and that it was justified by the facts.    (*Matter of Freeholders of Madrid*, 44 Misc. Rep. 431.)

When two towns are jointly liable to build a bridge, as in this case, and one refuses to act, the other may build it and recover' from the one refusing to act its share of the expense (Highway Law, §§ 254, 255), or a proceeding may be instituted by one of the towns under section 257 of the Highway Law to compel the other to join in building such bridge.    The Legislature having established the joint liability of the towns gave two remedies for enforcing such liability.    (*Beckwith* v. *Whalen*, 65 N. Y. 322.)    Under section 256 of the Highway Law freeholders are given the right to petition the town boards of each of the towns jointly liable.    They have that right in this case, but unless they can proceed in the Supreme Court as they have in this case, they are without a remedy to enforce such right.

The history of the development of the highway statutes indicates the intent of the Legislature to give interested freeholders a right to take proceedings to compel towns to perform their duty in regard to building and maintaining bridges, and it is unreasonable to suppose that after it granted such right it intended to leave such freeholders without a remedy.

The order should be affirmed, with costs.

All concur, except KRUSE, P. J., and SEARS, J., who dissent in a memorandum by KRUSE, P. J.

KRUSE, P. J. (dissenting):

If the highway upon which the bridge in question is located is a town line highway within the meaning of section 207 of the Highway Law, the towns between which it runs are jointly liable for the maintenance of the bridge.    That section so provides. It does not, however, follow that the proceeding provided for in section 256 to compel the rebuilding or repair of such bridge may be maintained.    That section applies to bridges over streams dividing adjoining towns liable to maintain the same.    This bridge is wholly within one of the towns and the stream which it bridges does not divide the towns.

The provisions of section 256 in that regard are the same as originally enacted in 1857 (Laws of 1857, chap. 639), and the Court of Appeals has held that the proceeding, being statutory, can only be maintained in cases especially provided for; that where the

bridge is wholly within one town and not over a stream dividing the towns the proceeding cannot be maintained, although the towns are jointly liable for its maintenance. (*Matter of Freeholders of Cattaraugus County,* 59 N. Y. 316.)

Sections 254 and 255 provide for proceedings for making and repairing joint bridges and cover all cases where two or more towns are liable for making and repairing such bridges, and are not limited to cases where the bridge is over a stream dividing the towns, as is section 256. (*Lapham* v. *Rice,* 55 N. Y. 472; *Day* v. *Day,* 94 id. 153.) These sections are applicable to this case if the highway is in fact a town line road. But, as before stated, section 256 does not seem to apply for the reason that the bridge is not over a stream dividing the towns. I think the decision in *Matter of Freeholders of Madrid* (44 Misc. Rep. 431) is in conflict with the decision in the *Cattaraugus Case* (*supra*).

I am of opinion that the order should be reversed and the proceeding dismissed, with costs.

SEARS, J., concurs.

Order affirmed, with costs.