In the Matter of the Application of EDWARD C. WILSON, Petitioner, for a Mandamus Order against BOARD OF SUPERVISORS OF THE COUNTY OF ONEIDA and Others, Respondents.

Supreme Court, Oneida County, August 10, 1934.

*Frederic C. Barns,* for the petitioner.

*Albert T. Wilkinson,* for Arthur O'Brien, county superintendent of highways.

*Thomas B. Rudd,* for the board of supervisors, county of Oneida.

*Sisson & Hartness [Harold Hartness* of counsel], for the town board of the town of Whitestown and Reynold F. Homann, as town superintendent of highways of town of Whitestown, intervening voluntarily.

DOWLING, J. Petitioner owns and lives upon a farm in the town of Whitestown which is situate upon the highway leading from Westmoreland to Walesville and is a voter and a taxpayer in said town. This highway crosses the Oriskany creek by a bridge of ancient design and construction.

In December, 1932, said bridge was " posted " with the following legend, " Warning, three tons safe load," displayed on a sign erected at each end of the bridge. On May 25, 1934, a Stewart eight cylinder van type moving truck, owned by Lavin's Motor Dispatch, 424 Johnson avenue, Brooklyn, N. Y., crashed through this bridge while attempting to cross same. The truck and load execeded ten tons in weight.

A dispute immediately arose between the officials of the town of Whitestown and the county superintendent of highways of the county of Oneida as to which was charged with the duty of repairing the bridge. Neither has moved in the matter. The bridge is still a wreck.

Feeling aggrieved on account of the inconvenience caused by the protracted delay, petitioner instituted this proceeding for a peremptory order of mandamus to compel the responsible authority to restore the structure. The town of Whitestown and its town superintendent of highways claim the duty rests upon the county superintendent and board of supervisors of Oneida county. They in turn assert the duty devolves upon either the town of Whitestown or the town superintendent of highways of said town.

The town of Whitestown and its town superintendent rest their case upon section 19 of the Highway Law (added by Laws of 1928, chap. 466, as amd.), inasmuch as said bridge had a span of twenty-five feet or more. The county superintendent of highways main-

tains that, prior to May 25, 1934, said bridge was never reported to him as unsafe for public use and travel, either by the district superintendent of highways, the town superintendent of highways of the town of Whitestown, or five residents of said town; consequently, he was never called upon to condemn said bridge or to determine the load that it would safely carry. He admits, however, that in December, 1932, he voluntarily inspected said bridge and found it safe for public use and travel under loads not exceeding three tons and " posted " notices to that effect at either end of the bridge as provided in subdivision 17 of section 14 of the Vehicle and Traffic Law and that he repaired said bridge and paid for same out of the county road fund although said road was not a part of the county system of highways, which latter fact is conceded. Under these circumstances, the board of supervisors and the county superintendent of highways maintain they have no responsibility in the matter so far as the repair or replacement of said bridge is concerned.

The town of Whitestown and the town superintendent of highways of said town argue that, in view of the fact that the bridge collapsed under the weight of said loaded truck, it was patently unsafe and needed no condemnation, and that written notice of the condition by the aforesaid persons would have availed nothing, and that the county superintendent of highways, in fact, had knowledge of the condition of said bridge immediately upon the happening of said accident. The county superintendent admits he learned of said accident quite soon after its occurrence.

An examination of the facts discloses that in 1925 said highway was designated by the Superintendent of Public Works of the State of New York to be improved as a State highway under section 122 of the Highway Law. The Superintendent of Public Works of the State of New York has assumed no jurisdiction over said bridge. Until he does, it remains and will remain a town highway bridge under subdivision 3 of section 3 of article 1 of the Highway Law, and the town is charged with the maintenance thereof unless it is relieved of such responsibility by said county superintendent and the board of supervisors of Oneida county pursuant to the Highway Law. The mere fact that the county superintendent of highways made repairs to the bridge from the county road fund, as provided in subdivision 6 of section 320-b of the Highway Law, does not impose liability upon him or the board of supervisors to repair or replace said bridge.

Section 33 of the Highway Law provides that each county superintendent of highways shall have general charge of all highways and bridges within his district or county *and see* that the same are

improved and maintained as provided by law and have the general supervision of the work of constructing, improving and repairing bridges and town highways in his district or county, and that he shall visit and inspect the highways and bridges in each town in his district or county at least once in each year, and that he shall approve plans and specifications and estimates for the erection and repair of bridges.

The county superintendent of highways, in the absence of notice that said bridge was unsafe for public use and travel, was under no obligation to condemn the same or to barricade said bridge after the happening of said accident. It is only when the county superintendent condemns a bridge after having received the notice provided for in subdivision 1 of section 19 of the Highway Law that the county becomes responsible under subdivision 6 of said section for the repair or reconstruction of such bridge. In other words, the giving of notice of the unsafe condition for travel over the bridge and the condemnation thereof are conditions precedent before the county can be held responsible under subdivision 6 of section 19 of the Highway Law for the repair or reconstruction of such bridge. Concededly no such notice was given to the county superintendent.

Can the county of Oneida be held liable for the repair or replacement of said bridges under subdivision 7 of section 19 of the Highway Law, which provides: " If a bridge having a span of twenty-five feet or more has been inspected by the county superintendent and posted by the town superintendent as safe for restricted use, it shall be the responsibility of the county to maintain the structure in a proper condition of repair for safe usage by the public in accordance with the posted limits of loads and speed."

Subdivision 17 of section 14 of the Vehicle and Traffic Law provides that it shall be the duty of the Superintendent of Public Works to erect signs at both ends of bridges under his jurisdiction stating the capacity in tons which the bridge will safely carry, and *for all other bridges*, that is, bridges not under the jurisdiction of the Superintendent of Public Works, it shall be the duty of *the authority* having jurisdiction to place similar signs.

The question arises what " authority " had jurisdiction and the duty to place signs upon the bridge in question.

The town superintendent of highways is charged with the care and superintendence of highways and bridges on highways less than two rods in width. (Highway Law, § 47, subd. 1.) The county superintendent of highways has general charge of all highways and bridges within his district or county and it is his duty to see that the same are improved, repaired and maintained as provided by law, and he has the general supervision of the work of

constructing, repairing and improving bridges and town highways in his district or county. If the Westmoreland-Walesville highway is less than two rods in width, the duty would be on the town superintendent of highways of the town of Whitestown to " post " this bridge. Respondents concede that said highway, that is, its right of way, is over two rods in width.

Section 250 of the Highway Law provides: " The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public or free bridges constructed over streams or other waters within their bounds." Implicit in this provision is the duty on the part of the town itself to inspect, maintain and " post " bridges on town roads more than two rods in width. `(People ex rel. Root v. Board of Supervisors, 146 N. Y. 107, 112.) Regardless of whose duty it was to " post " the bridge, there would be no responsibility upon the county to maintain the same unless it had been inspected by the county superintendent of highways pursuant to notice given under subdivision 1 of section 19 of the Highway Law and ordered posted by the town superintendent of highways of the town of Whitestown as safe for restricted use.

The mere fact that the county superintendent of highways had general charge of all highways and bridges in the county, and was obliged to see that the same were improved, repaired and maintained, and that he had general supervision of the work of constructing, improving and repairing bridges and town highways in the county, and was required to approve plans, specifications and estimates for the erection and repair of bridges and the construction and maintenance of town highways as provided in section 33 of the Highway Law, does not indicate that the county is responsible for the cost of such improvements, repairs or maintenance. The theory of the statute is that the county superintendent, on account of his skill and experience, shall assist towns, district and town superintendents in their work and supervise the same, so that the towns may have the benefit of his skill and experience, and he is required to see that they do their work promptly and properly.

In the instant matter the county superintendent inspected this bridge in December, 1932, found it safe for public travel if restricted to loads not exceeding three tons, and posted the bridge accordingly, but not in the manner required under subdivision 3 of section 19 of the Highway Law. He felt that such was his duty under subdivision 17 of section 14 of the Vehicle and Traffic Law. Whether or not it was his duty, such action upon his part, under the facts peculiar to this proceeding, did not bind the county of Oneida to the extent of making it liable for the maintenance and

repair of said bridge. His action was personal and was designed to lend protection to the traveling public. It did not subject the county to liability under subdivision 7 of section 19 of the Highway Law.

Under this view, the county superintendent and the board of supervisors were clearly within their rights in refusing to undertake the repair of said bridge. The responsibility for the repair of said bridge rests upon the town of Whitestown. (*Matter of Town of Nichols* v. *County of Tioga*, 130 Misc. 217.) Under section 47 of the Highway Law the town superintendent may not be called upon to act in this instance.

As to respondents Homann, O'Brien and board of supervisors, the proceeding is dismissed, without costs. Petitioner is entitled to and is granted a peremptory order of mandamus against the town of Whitestown compelling it to forthwith repair said bridge and to open it to travel, with fifty dollars costs and disbursements as provided in section 1336 of the Civil Practice Act.

Enter order accordingly.