FRED E. BENNETT, Plaintiff, *v.* COUNTY OF DELAWARE, TOWN OF DAVENPORT in Said County, and WILLIAM J. HOWLAND, Superintendent of Highways of Said County; COUNTY OF OTSEGO, TOWN OF ONEONTA in Said County and VICTOR HOKE, Superintendent of Highways of Said County, Defendants.

Supreme Court, Trial and Special Term, Delaware County, November 11, 1939.

*George L. Bockes,* for the plaintiff.

*Samuel H. Fancher,* for the defendants County of Delaware, Town of Davenport and William J. Howland, superintendent of highways of the county of Delaware.

*Dennis J. Kilkenny,* for the defendants Otsego County, Town of Oneonta and Victor Hoke, superintendent of highways of the county of Otsego.

GOLD (A. E.), J. This is a motion to dismiss the complaint on the ground that it fails to state a cause of action.

Mickle bridge, which formerly divided the towns of Davenport and Oneonta in Delaware and Otsego counties, respectively, was washed away in a flood on September 21, 1938, and the purpose of the action is to compel its restoration. The bridge had a span of more than twenty-five feet and was over a small body of water known as Charlotte creek.

The material allegations of the complaint are that the plaintiff is the owner of a farm of 175 acres located in both towns and on both sides of Charlotte creek; that the bridge " was the only practicable means of travel between the Davenport and Oneonta portions of the plaintiff's farm;" that the only other way is " a round-about-route of about four and one-half miles long * * * the heavily traveled Emmons-West Davenport improved highway, which * * * in addition to the hazards aforesaid, involves three crossings at grade;" that " the safety and convenience and necessities of the traveling public require immediate reconstruction of said bridge;" that the plaintiff and others have repeatedly petitioned the defendants to rebuild but nothing has been done; that the plaintiff's farm has already decreased substantially in value, and, unless the bridge is replaced, may in time become completely valueless; that the damage to the plaintiff is serious and continuous; and that the plaintiff has no adequate remedy at law.

The relief sought is that the defendants be compelled to rebuild; that, if the bridge is not to be restored, the defendants make " a decision declaring such bridge reconstruction unnecessary;" that condemnation commissioners be then appointed to determine the plaintiff's damage; and, in addition, that the plaintiff have " such damages as he shall be found entitled to sustained by him from a reasonable time after destruction of the bridge until the time it shall be reconstructed."

The counties of Delaware and Otsego attack the sufficiency of the complaint on the ground that the obligation to rebuild, assum-

ing that it exists, is exclusively upon the towns of Davenport and Oneonta and not upon them.

The claim is sound and must prevail. "Under the general statutory system of this State the duty [*i. e.*, to maintain and repair bridges] is placed on the towns or municipalities in which they are located, and not upon the counties, as in England, although many exceptions have been created by special statute." (*People ex rel. Keene* v. *Supervisors*, 142 N. Y. 271, 276.)

The Highway Law is explicit. "The towns of this State, except as otherwise herein provided, shall be liable to pay the expenses for the construction and repair of its public or free bridges constructed over streams or other waters within their bounds, and their just and equitable share of such expenses when so constructed over streams or other waters upon their boundaries, * * * and when such bridges are constructed over streams or other waters forming the boundary line of towns, either in the same or adjoining counties, such towns shall be jointly liable to pay such expenses." (§ 232.)

It is true that the counties are required to pay not less than one-sixth of the expense (Id.), but the duty to repair or rebuild is still the town's in the first instance. (*Matter of Town of Saratoga*, 160 App. Div. 60, 62.)

It is said, however, that resort may be had to section 231 of the Highway Law, on the theory apparently that when a bridge is destroyed, the practical result is the same as if it had been taken out of use after being condemned, in which event the burden is placed upon the counties and not the towns. Plausible as the argument may seem it must yet be rejected.

Section 231 provides first that "the county superintendent shall cause an inspection to be made of any bridge located on a county road or town highway outside of a city and which is not on the improved State system of highways, or any bridge which is under the supervision of the town superintendent of highways located within an incorporated village, which is reported to be unsafe for public use and travel by the town superintendent or five residents of the town." (Subd. 1.) If the bridge is found to be totally unsafe for public use, the county superintendent is required to condemn it and notify the superintendent and supervisor of the town. (Subd. 2.) Upon condemnation, if the bridge has a span of twenty-five feet or more, the county superintendent is directed without delay to prepare the necessary "plans, specifications and estimates for repair, alteration or reconstruction of such bridge and it shall be the duty of the board of supervisors forthwith to undertake such repair, alteration, reconstruction or construction."

(Subd. 6.) The duty to pay the cost is placed upon the county and " the board of supervisors of such county is hereby authorized to provide funds for such purposes." (Id.) It is further provided that if the bridge is located in more than one county, " the procedure in this section shall apply equally to such counties and county superintendents." (Subd. 9.)

These provisions plainly have no application here. The bridge was not condemned but was destroyed by the elements. To be sure, it was necessarily withdrawn from use to the same extent as it would have been if condemned, and the logic of requiring the county to rebuilt in the one instance and the town in the other is not readily apparent. Perhaps the obligation should be upon the county in either event, and so it would seem, but the change must come from the Legislature and not the courts.

The law in its present state is certain. Unless a bridge has been condemned by the county superintendent of highways after inspection the duty to rebuild is upon the town, and if the bridge forms the dividing line between two towns, then upon them equally. Section 232 and not 231 of the Highway Law controls. (*Matter of Wilson* v. *Board of Supervisors*, 152 Misc. 645; *Matter of Town of Nichols* v. *County of Tioga*, 130 id. 217; *Murphy* v. *Fort Edward*, 79 id. 296.)

Section 64 of the County Law provides that " if any bridge within a county shall be destroyed by the elements and the board of supervisors of the county shall deem the expenses of the construction of a new bridge * * * would be too burdensome upon the town or towns * * * which would otherwise be liable therefor, the board * * * may provide for the construction of a bridge * * * at or near the site of the bridge so destroyed." Nothing here helps the plaintiff. The board may assume the expense (*Witimer* v. *Greenhalgh*, 256 App. Div. 839), but there is no mandatory direction that it shall. Indeed, the statute specifically recognizes that in the absence of such action by the county the duty is upon the towns.

Section 68 of the County Law, although much more persuasive, still does not place the burden on the counties. The material provisions are that the boards of supervisors shall " provide for the care, maintenance, preservation and repair of any * * * bridge intersecting the boundary line of counties or towns, which bridge is by law a joint charge upon such counties or towns, or on the towns in which it is situated;" and shall " severally apportion, as it may deem equitable, the expenses thereof on the towns respectively liable therefor, or on the respective counties when liable." It has been authoritatively held, however, that it was not intended

thereby " to change the rule, long recognized in the State, that the towns must build such bridges and that after they were constructed each county was to pay its one-sixth share of the expense." (*Matter of Town of Saratoga*, 160 App. Div. 60, 63; affd., 211 N. Y. 543.)

Whether the same conclusion would be reached if the question were still an open one need not be determined. It is true that some doubt was expressed in *Khoury* v. *County of Saratoga* (267 N. Y. 384), but hardly enough to justify departure from this well-settled rule. The question presented there was whether one who was injured by reason of ice negligently permitted to be formed on a county line bridge could recover against the counties as well as the towns. Answering in the affirmative, the court held that the duty of maintenance and care was upon the towns and counties jointly.

*Matter of Town of Saratoga* (*supra*) was distinguished, *first*, because there " the Appellate Division directed the town and not the county to erect such a bridge in the first instance " (p. 393), and, *second*, because " the question of liability for negligence in maintenance was not presented in that decision and it might very well be that, as some one municipality had to do the work, the cost being shared, the towns could do it as well as the counties." (Id.)

The court also relied on section 6 of the County Law, pointing out that it was enacted long after the *Town of Saratoga* case. Section 6, however, simply changes the rule of non-liability of counties in tort when performing governmental functions, and is, therefore, without relevancy here.

It was finally stated that the case apparently had not reached the Court of Appeals, an obvious oversight, since it was affirmed without opinion. (211 N. Y. 543.)

It necessarily follows that the complaint must be dismissed against the counties of Delaware and Otsego.

The remaining question is whether the complaint states a cause of action against the towns of Davenport and Oneonta. That the plaintiff may compel the rebuilding of the bridge in a proper proceeding and upon an adequate showing is clear beyond dispute. " The history of the development of the highway statutes indicates the intent of the Legislature to give interested freeholders the right to take proceedings to compel towns to perform their duty in regard to building and maintaining bridges." (*Matter of Freeholders of the Towns of Elma and Marilla*, 201 App. Div. 252, 256; affd., 234 N. Y. 544.)

The fatal obstacle here is that relief is sought by action, and no statute permits it. Statutory authorization there must be, since no private right existed to compel the repair or reconstruction of

bridges at common law. (*Russell* v. *Men of Devon*, 2 T. R. [Eng.] 667, 673; *Regina* v. *Justices of St. Peter*, 2 Ld. Raym. [Eng.] 1249, 1251; *Hill* v. *City of Boston*, 122 Mass. 344.) The duty was a public one, and the sole remedy was by presentment or indictment, on the theory that it " was regarded as the subject of a popular action, not of a private one." (*Markey* v. *County of Queens*, 154 N. Y. 675, 681.) To the same effect are *Weet* v. *Trustees of the Village of Brockport* (16 N. Y. 161); *People ex rel. Bently* v. *Highway Commissioners* (7 Wend. 474), and *Bartlett* v. *Crozier* (17 Johns. 439, 452, 455).

It is, therefore, clear that the plaintiff has mistaken his remedy, which should have been by motion, as prescribed by the Highway Law. " Whenever two or more adjoining towns which * * * shall be liable to make or maintain any bridge whether in the same or different counties, three freeholders in either of such towns may, by petition signed by them, apply to the town board in each of said towns to build, rebuild or repair such bridge, and if such town boards refuse * * * such freeholders, upon affidavit and notice of motion * * * may apply to the Supreme Court at a Special Term thereof * * * for an order requiring such town boards to direct the town superintendents to build, rebuild or repair such bridge * * *. Upon the coming in of the report in case of such reference, or upon or after the hearing of the motion * * * the court shall make an order thereon as the justice of the case shall require. If the motion be granted in whole or in part, * * * such court shall specify the amount of money required for that purpose, and how much thereof shall be raised in each town." (§ 237.)

The remedy thus given is definite and complete, and it must be held to exclude any other.

The proceeding obviously resembles mandamus except that the court is given much wider latitude. (Cf. *People ex rel. Keene* v. *Supervisors, supra; People ex rel. Otsego County Bank* v. *Supervisors of Otsego County*, 51 N. Y. 401.) It may act, for example, notwithstanding the claim that the towns lack the necessary funds to repair or rebuild. (*People ex rel. Canton Bridge Co.* v. *Board of Auditors*, 136 App. Div. 166; affd., 204 N. Y. 609; *Matter of Mt. Morris*, 41 Hun, 29.)

Another form of relief is also provided by the Highway Law, although it is precluded here, of course, on account of the large outlay which would obviously be necessary. " Whenever any such bridge shall have * * * been swept away by a freshet or otherwise, if the town superintendent of the adjoining town or towns, after reasonable notice of such condition of the bridge, have

neglected or refused, or shall neglect or refuse to repair or rebuild it, then whatever funds have been or shall be necessarily or reasonably laid out or expended in * * * rebuilding the same, by any person or corporation, shall be a charge on such adjoining town or towns, each being liable for its just proportion; and the person or corporation who has made such expenditure, * * * may apply to the Supreme Court, at a Special Term, for an order requiring such towns severally to reimburse such expenditures." (§ 243.)

The complaint is dismissed, without prejudice, however, to proceed in accordance with the applicable provisions of the Highway Law. Submit order.